## NEW ENGLAND MUT. LIFE INS. CO. v. Mary Hawkins BARNETT.
### Civil Action No. 20.

District Court, S. D. Alabama, S. D.

July 9, 1941.

McCorvey, McLeod, Turner & Rogers and Robert Adams, all of Mobile, Ala., for New England Mut. Life Ins. Co.

McMillan & Caffey, of Brewton, Ala., for Mary Hawkins Barnett.

McDUFFIE, District Judge.

This cause coming on to be heard, the court having considered the pleadings and evidence of the witnesses given orally, the court, on to-wit, the 4th day of April, 1941, entered a decree cancelling the two insurance contracts herein involved and dismissed counterclaims filed herein by Mrs. Barnett. On said date the judge of the court suggested that he would in due course draft a finding of facts and conclusions of law. The court now makes the following finding of facts and its conclusions of law:

### Finding of Facts.

On February 8, 1938, David Allen Barnett made application to the New England Mutual Life Insurance Company, hereinafter called the Company, for $5,000 insurance on his life payable to his wife Mary Hawkins Barnett. This policy provided for term insurance for the first three years and was issued on February 14, 1938. Thereafter on June 3, 1938, Mr. Barnett again made application to the company for an additional $5,000 on his life, likewise payable to his wife. This policy issued on June 10th was a five-year convertible policy. Both policies provided comparatively small premiums. On being examined before Dr. R. A. Smith, a medical examiner for the Insurance Company, Mr. Barnett signed certain statements, representations, agreements and questions provided by the Insurance Company. He also submitted himself to a medical examination before Dr. Smith. Among the questions propounded on the forms above mentioned, was one requesting him to state what illnesses, diseases or injuries he had had since childhood. To this question Mr. Barnett answered that the only disease he ever had since childhood was influenza in 1918, of a mild type lasting about ten days, from which there was complete recovery. Another question propounded to Mr. Barnett on applications for policies was: "Have you consulted or been examined by a physician or other practitioner within five years?" To this question Mr. Barnett answered: "No". The next question was: "Have you ever had or been suspected of having sugar or albumin in urine?" To this question Mr. Barnett answered: "No". The applications carried the usual agreement on the part of the insured that the insurance applied for should not take effect unless and until the application was approved by the company's home office and the first premium paid while the insured was in good health.

The company accepting the statements and representations made by Mr. Barnett as true, made no further inquiry as to his physical condition, and the two policies were issued on the dates aforesaid. Within ten months after issuance of the first policy and about six months after the issuance of the second policy, Mr. Barnett died, the cause of his death being a blood stream infection of prostatic focus with diabetic mellitus being a contributory cause of death.

That upon receipt of proof of death showing the above ailment, the company made an investigation which disclosed that Mr. Barnett's answers to the questions above referred to did not state the truth and that he falsely represented material facts increasing thereby the risk of the company as to his insurability.

On the 30th of December, 1938, the company advised Mrs. Barnett, the beneficiary, that it had decided to rescind both of the contracts of the insured because of the failure of Mr. Barnett to disclose to the company certain facts that were material to his insurability. The company tendered to Mrs. Barnett $189.81, the amount paid for the premiums on both policies, together with interest thereon at the rate of 6%, with the request that she authorize the cancellation of the policies. Mrs. Barnett refused to accept the tender and the company thereupon, to-wit the 16th of January, 1939, filed in this court its complaint setting out that it was misled into issuing the contracts of insurance by the misrepresentations and concealments of the insured, and asking that a decree be entered canceling both contracts, declaring the same to be void and of no effect. The company at the time of the filing of the complaint paid into the registry of the court the amounts tendered Mrs. Barnett which she had refused to accept. I find that on the date of the filing of the complaint by the company on January 16, 1939, the beneficiary had filed no suit on the policies and none was filed until September 27, 1939, when a suit on each policy was filed in the state court of Escambia County and removed to this court. Further proceedings thereon were stayed pending the determination of this suit. Mrs. Barnett in April, 1940, filed her answer pre-

senting her defenses and filed counter-claims on the policies.

The bill of complaint, amongst other things, alleged that the policies were obtained by fraud or by misrepresentations of facts material to the risk. That had the company known of the true condition of the health of the insured, it would not have issued the policies.

I find that the allegations contained in the petition are substantially true; that Mr. Barnett had been advised in 1931 by Dr. Turbeville that there was sugar in his urine and that he was a diabetic; that in 1937 Dr. Carter, the family physician of the insured, likewise told him he had sugar in his urine; that the sugar content could be diabetes; that diabetes was found to be a contributing cause of his death which occurred relatively soon after taking out the insurance contract; that the insured had knowledge of his diabetic condition, having made, sometime between dates of issuance of the policies herein involved, a statement that none of the doctors in the town of Atmore, a town some fifteen or twenty miles distant where he did some of his banking business, would pass him for life insurance.

I find upon the question of whether Mr. Barnett was persuaded by an agent of the company to drop a $5,000 policy, at that time in force and effect with the Bankers' Reserve Life Insurance Company; that the policy was surrendered because Mr. Barnett had borrowed the maximum amount on it and it had no cash surrender value; that the agent of the New England Mutual Life Insurance Company accepted Mr. Barnett's note for the premiums to be paid on the policies issued him; that Mr. Barnett swapped the more expensive policy on which a premium would soon be due and which he could not pay, for two cheaper policies without having to pay any cash at the time they were issued.

I further find that the plaintiff company was required under the law to set aside a cash reserve on account of the two policies in the sum of $9,780.79 to be held until it was judicially determined whether the company was legally responsible under the insurance contracts. The policies sought to be cancelled carried a double indemnity clause if death resulted from bodily injury effected solely through external, accidental and violent means. A claim for double indemnity because of accidental death was made, alleging that it was due to a splinter of wood which he accidentally stuck in his thumb. This claim was not established, the evidence failing to show or prove such accidental death as contemplated in the terms of the policies.

The court further finds that diabetes, which the evidence disclosed contributed to the cause of death, is an incurable disease; that the presence of sugar in the urine is a "danger signal"; that upon the examination showing sugar in the urine of an applicant, the insurance companies usually, if not always, make further investigation and examination to determine the presence of diabetes; that diabetic applicants are not good risks; that one suffering from diabetes may have longevity of life promoted by proper diet and the administering of insulin; that it is not unusual for one with diabetes under proper control to do manual labor from day to day; and that resistance to complications of diseases is lowered in diabetics.

The court further finds upon the issue that the company had written policies for other diabetics, the only case referred to by the witnesses was the case of one Mr. Kelly; that upon learning of sugar in the urine of this applicant, the company made further examination and determined that he was not suffering from diabetes.

### Conclusions of Law.

Under the facts in this case, the court concludes that the company is entitled to have its petition seeking equitable relief disposed of before proceeding further, its bill of complaint having been filed prior to the commencement of a suit on the policies. While the rule is well recognized that frauds and misrepresentations such as are set out in this complaint may be set up in defense of a lawsuit on the contracts, yet if the company seeks equitable relief prior to an action at law, it has a right to be heard and have the question determined as an equitable proceeding.

While the formal distinction between proceedings in law and in equity is abolished by the new rules of civil procedure, 28 U.S.C.A. following section 723c, yet remedies both at law and in equity are available to parties in the same court and in the same case. Neither legal nor equitable remedies have been abolished. What was an action at law is still an action at law, and what was a bill in equi-

764

ty is still a civil action founded on principles of equity. In the case at bar, the question of equitable relief through cancelation and rescission should first be disposed of as a proceeding in equity; if a legal issue remains, such issue is triable by a jury.

■ There was a duty resting on Mr. Barnett in answering the questions, to reveal the facts as they existed, and to answer truthfully questions in the applications. He deceived the company in failing to do so, and did not properly perform his duty as one of the contracting parties.

The purpose of propounding to the applicant for insurance the inquiry as to whether or not he had consulted or been examined by a physician within the past five years was to have the applicant reveal medical consultations or treatments, or both, so that the company might make further inquiry to determine the applicant's insurability. Such an inquiry was a material one and the answer thereto was likewise material. Whether fraudulently intended or not, the answer was deliberately and knowingly made, and the company had the right to rescind and cancel the contracts of insurance. It is immaterial whether such false answers made by Mr. Barnett were made by him consciously, intentionally, or willfully, or were the result of oversight or inadvertence, the result is the same even if there were no fraudulent intent because the company was denied the benefit of the information it might have obtained from other doctors who treated or advised Mr. Barnett as to his condition. Under the facts and circumstances existing at the time the petition for cancellation was filed in this cause, the company acted within its rights in filing its bill of complaint seeking cancellation and rescission of the policies. In equitable proceedings, the court will not withhold relief from a suiter merely because he may have an adequate remedy in a law action provided his adversary chooses to give it to him. A remedy at law cannot be adequate if its adequacy depends upon the will of the opposing party.

Since the petition here was filed before any action on the policy was brought by the beneficiary, the issues presented in such petition should first be disposed of.

The court further concludes that there is an irreparable loss to the company as alleged in the bill of complaint. Though comparatively small, yet it is a loss and irreparable because there cannot be a return to the Company on money held in reserve pending the judicial determination of its responsibility under the contracts.

■ As to the right of a trial by jury, since the policies in question were procured by misrepresentations of material facts which increased the risk of loss and which necessitates the cancellation of the policies, even if the law actions transferred from the state court were tried first, or if the counterclaims set up in this case were tried, this court would direct a verdict for the Insurance Company under the undisputed testimony. Since a directed verdict would be ordered in event any of the issues were submitted to the jury, it was unnecessary to submit the case to a jury.

The bill of complaint contains equity. Its allegations have been sustained and the complainant is entitled to the relief sought.