## BYRAM v. VAUGHN.
### Civ. No. 37465.

District Court of the United States for the District of Columbia.

Dec. 16, 1946.

Joseph C. Turco, of Washington, D. C., for plaintiff, for the motion.

H. Clifford Allder, of Washington, D. C., for defendant, opposed.

HOLTZOFF, Associate Justice.

This a motion for a preliminary injunction in an action brought by an employer to restrain a former employee from violating a negative covenant contained in the employment contract, by which the employee agreed not to solicit patronage from the employer's customers for one year after the termination of the employment.

On September 21, 1940, the plaintiff, Ira T. Byram, Jr., who was engaged in the business of leasing and renting automatic music machines and, coin-operated machines of other types, hired the defendant, Vernon M. Vaughn, as a collector on a commission basis. The written contract of employment contained a provision that while in the plaintiff's employ or within one year thereafter, the defendant would not solicit patronage for such machines from any of Byram's customers. There was no provision in the contract requiring Byram to employ Vaughn for any specified period of time. Apparently the employment was at will. It is alleged that the employment continued until July 20, 1946, when the plaintiff terminated the relationship. The plaintiff brings suit to enforce the defendant from soliciting business in violation of the negative covenant and seeks a preliminary injunction.

It is well established that contracts in partial restraint of trade, auxiliary or ancillary to other stipulations, are valid and are enforceable in equity, if they are

necessary or appropriate for the purpose of effectuating the principal provisions of the agreement. Such restraints of trade may be divided into two general classes. In the first category are found provisions introduced into a contract for the purpose of enforcing an affirmative agreement to perform services. The leading English case of Lumley v. Wagner, 1 De Gex, M. & G. 604, is typical of this group. There a noted singer had undertaken to perform at the complainant's opera house and not to sing elsewhere during the period of employment. The Lord Chancellor issued an injunction restraining her from singing at a rival establishment. In such cases, the inadequacy of the remedy by way of damages consists in the difficulty of readily finding a substitute for the recalcitrant employee. Consequently, such covenants are ordinarily enforced in equity only if the services to be rendered are special, unique, or extraordinary.[1]

The second class of negative covenants consists of agreements which are designed to protect a business from unfair competition on the part of former owners, partners, or employees. Such restraints are held proper and enforceable if they are limited and partial and are no greater either in time or in area than is required to afford fair protection to the owner of the business. The leading case upholding negative covenants of this type is United States v. Addyston Pipe & Steel Co., 6 Cir., 85 F. 271, 281, 46 L.R.A. 122. Judge Taft's opinion, which is regarded .as a classic, summarized the law on this point as follows: "* * * covenants in partial restraint of trade are generally upheld as valid when they are agreements (1) by the seller of property or business not to compete with the buyer in such a way as to derogate from the value of the property or business sold; (2) by a retiring partner not to compete with the firm; (3) by a partner pending the partnership not to do anything to interfere, by competition or otherwise, with the business of the firm; (4) by the buyer of property not to use the same in competition with the business retained by the seller; and (5) by an assistant, servant, or agent not to compete with his master or employer after the expiration of his time of service. Before such agreements are upheld, however, the court must find that the restraints attempted thereby are reasonably necessary (1, 2, and 3) to the enjoyment by the buyer of the property, good will, or interest in the partnership bought; or (4) to the legitimate ends of the existing partnership; or (5) to the prevention of possible injury to the business of the seller from use by the buyer of the thing sold; or (6) to protection from the danger of loss to the employer's business caused by the unjust use on the part of the employe of the confidential knowledge acquired in such business."

The validity of such contracts has been expressly recognized in the District of Columbia. Thus in Godfrey v. Roessle, 5 App.D.C. 299, a contract for the sale of a laundry contained a covenant that the seller would not engage, or be associated with the management of any laundry in the District of Columbia. This provision was held binding.

In Erikson v. Hawley, 56 App.D.C. 268, 12 F.2d 491, the court sustained an agreement between an orthodontist and his assistant, whereby the latter undertook not to practice orthodontia in the District of Columbia for a period of 10 years after the termination of the employment in consideration of a promise on the part of the former to employ him for a period of five years.

In Allison v. Seigle, 65 App.D.C. 45, 79 F.2d 170, a conveyance of a drug store contained a provision that the seller would not conduct, own, or operate any other drug store within a radius of 10 blocks, while the purchaser continued to own the drug business. This contract was likewise upheld.

The case at bar, however, presents an additional consideration. In this instance, the agreement of employment contained no undertaking on the part of the employer to continue the employee's services for any specified term. So far as the employer's obligation was concerned, he could have with impunity terminated the em-

---

[1] Pomeroy, Equity Jurisprudence, Sec. 1343; 10 Columbia L.R. 559.

ployment and discharged the employee the day or even the minute after the employment commenced. In other words, there was no mutuality of obligation. The question to be determined is whether in the absence of mutuality of obligation, the strong arm of equity should accord to the employer drastic relief by way of an injunction, which would curtail his former employee's freedom of action and possibly restrict and limit him in his opportunity to earn a livelihood. This point does not appear to have been determined in any reported case in the District of Columbia. Other jurisdictions are divided on this question.

The leading case sustaining the validity of such contracts and holding that they are enforceable in equity, even in the absence of mutuality of obligation, is Sherman v. Pfefferkorn, 241 Mass. 468, 135 N.E. 568. The authority of this case, however, is somewhat weakened by a later decision in the same State, Economy Grocery Stores Corp. v. McMenamy, 290 Mass. 549, 195 N.E. 747, in which it was held that such a contract is not void for lack of consideration and is not wanting in mutuality, but that whether it should be enforced by specific performance, rests in the sound discretion of the court.

It must be pointed out that the question is not whether such a contract is valid, but whether the court should enforce it by an injunction, instead of leaving the parties to their remedy by way of a claim for damages. There is no doubt that a contract of hire by which the employer undertakes to pay a specified compensation for services to be rendered by the employee in the future is binding. If the employee renders the services, the employer is obligated to pay the stipulated compensation. The contract is unilateral, i.e., a contract in which an act is a consideration for a promise, as distinguished from a bilateral contract, in which a promise by one party is the consideration for a promise by the other party. Restatement of the Law of Contracts, Sec. 75(d) and Sec. 76; Williston on Contracts, Vol. I, Secs. 13 and 102. The real problem in the instant case is not whether the contract is valid, but

whether it is the kind of contract which a court of equity should enforce in the exercise of sound discretion by the drastic remedy of an injunction.

This distinction was pointed out by Judge Woolley in the Third Circuit, in Meurer Steel Barrel Co. v. Martin, 1 F.2d 687, in which he made the following pungent comments:

"There is a recognized difference in law between the validity of a contract containing a provision for its termination by notice and the enforcement of such a contract in equity. The cases hold generally that a contract terminable on notice (if otherwise valid) is not for that reason void for want of mutuality of obligation, and for breach thereof an action will lie at law although the same contract may not, because of such provision, be enforcible in equity."

\* \* \* \* \* \*

"\* \* \* where the obligation of each party is supported by a consideration moving from the other, mutuality of obligation is not wanting and such a contract, otherwise valid, is enforcible at law. Such a contract, though valid, is not, however, always enforcible in equity. If for instance, an entirely valid contract contain a provision for its termination by one party on notice to the other, though enforcible at law, courts of equity will not, because of such provision, enforce it by granting equitable relief, as specific performance, but will leave the aggrieved party to his remedy at law. This is because the court will not grant equitable relief on a contract where one party can nullify its action by exercising his reserved power to terminate it." (at page 688 of 1 F.2d)

More recently, the Circuit Court of Appeals for the Fifth Circuit in Super Maid Cook-Ware Corp. v. Hamil, 50 F.2d 830, emphatically ruled that equity will not enforce contracts of this type. In that case, Judge Hutcheson made the following forceful observations on this point:

"\* \* \* it is our view that neither under the laws of Texas, of Illinois, nor of any other state should a court of equity

grant its decree to enforce these covenants." (at page 831 of 50 F.2d)

\* \* \* \* \* \*

"Without guaranteeing to the defendants one day's regular work, without the obligation of the appellant to employ them or pay them anything, upon a seductive promise of the disclosure of information upon which they may hope to build a profitable line of sales, the appellees are induced to sign a paper which, while it has the general appearance of a contract, but keeps the promise to the ear while it breaks it to the hope. Such a contract, wanting in mutuality, presenting no equitable considerations, a court of equity will not enforce." (at page 832 of 50 F.2d) The foregoing views are persuasive and convincing.

The same doctrine has been adopted and applied in a number of States. Thus, in Love v. Miami Laundry Co., 118 Fla. 137, 141, 160 So. 32, 34, the court in reaching this conclusion made the following statement: "It is not necessary that we hold the contract to be invalid \* \* \* but it is sufficient to say that equity should withhold injunctive relief which is sought for the purpose of coercing specific performance of such contract."

The following cases hold to the same effect: Victor Chemical Works v. Iliff, 299 Ill. 532, 550, 132 N.E. 806; May v. Lee, Tex.Civ.App., 28 S.W.2d 202, 204; Schneller v. Hayes, 176 Wash. 115, 28 P.2d 273.

In Erikson v. Hawley, 56 App.D.C. 268, 12 F.2d 491, to which reference has already been made, and which appears to be the only reported case in the District of Columbia involving a negative covenant in an employment contract, the agreement contained a stipulation that the plaintiff would employ the defendant for a period of five years.

█ The distinction between equitable and legal rights, and between equitable and legal remedies, still exists in the Federal courts in full force. While the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, have done away with the separation between actions at law and suits in equity, and have substituted one form of action, known as "civil action", this merger does not reach beyond an abolition of procedural distinctions between law and equity. The differentiation between equitable and legal doctrines, and between equitable and legal remedies, is part of the warp and woof of Anglo-American jurisprudence and is deeply imbedded in our system of law. It has not been abrogated or affected by the commendable simplification of procedure. Consequently, in determining whether an injunction should be granted, the basic doctrines of equity come into play. Sun Oil Co. v. Burford, 5 Cir., 130 F.2d 10; Coca Cola Co. v. Dixi-Cola Laboratories, 4 Cir., 155 F.2d 59, 63; Bellavance v. Plastic Craft Novelty Co., D.C., 30 F.Supp. 37, 39; Williams v. Collier, D.C., 32 F.Supp. 321; New England Mutual Life Ins. Co. v. Barnett, D.C., 39 F.Supp. 761; Monks v. Hurley, D.C., 45 F.Supp. 724; Fitzpatrick v. Sun Life Assurance Co. of Canada, D.C., 1 F.R.D. 713.

█ Compliance with a covenant to refrain from competition with a former employer may lead to a serious hindrance and a substantial handicap in one's effort to earn a legitimate livelihood. It may deprive the employee of the right to pursue a calling for which he is best fitted or of the opportunity to work in his chosen field of endeavor. An employer, who seeks to subject a former employee to such severe and drastic restrictions on his activities, should at least extend to him some assurance of financial security for a reasonable time. Otherwise, the employee may find himself completely at his employer's mercy. Such a result would seem inequitable and at times even contrary to the dictates of humanity. One who seeks to restrict another's freedom of action, should be willing to surrender his own independence to a corresponding degree. If the employer prefers to leave himself free to terminate the employment at will in his own discretion, he should not be accorded the drastic and far reaching remedy by way of an injunction to enforce a stipulation that would exclude the former employee from an opportunity freely to engage in the same business. These considerations lead the court to the conclusion that unless the contract which binds one not to compete with his former employer, also obligates

the employer to continue the employment for a specified term, the negative covenant should not be enforced by injunction.

Motion for a perliminary injunction denied.