The ROUSANA CO., Inc., Plaintiff,

v.

Milton G. GARLAND, Defendant.

No. C. 71-62.

United States District Court D. Puerto Rico, San Juan Division.

April 19, 1962.

Cordova & Cebollero, Hernan Franco, San Juan, P. R., for plaintiff.

Alex Gonzalez, Santurce, P. R., and Rafael Martinez Alvarez, San Juan, P. R., for defendant.

RUIZ-NAZARIO, Chief Judge.

INTRODUCTORY

This action is now before the Court on plaintiff's request for a preliminary injunction, which was the subject of a hearing on February 23, 1962, at which oral and documentary evidence were adduced, and defendant was granted leave to file his answer on the merits, which was done on March 7, 1962. Defendant also filed a sworn statement dated March 1, 1962, four affidavits dated February 27, 1962 and a memorandum dated February 28, 1962.

Plaintiff filed two memoranda, the last one dated March 15, 1962.

The Court is now duly advised in the premises.

THE FACTS

The factual situation resulting from the pleadings and evidence of record are as follows:

Defendant Milton G. Garland had, at least since 1958 and particularly during 1959, engaged in the sale of greeting cards in Spanish and English, in the employ of his brother Prentice Garland, who was then and still is the representative in Puerto Rico for Miller Art Company, Inc., manufacturer and publisher of greeting cards, in Spanish and English.

He continued to engage in that business up to October 1960, when he started negotiations to engage in the same line of business for the plaintiff herein, The Rousana Company, Inc., and its associate Belmont Greeting Card Co., Inc., and a contract dated January 13, 1961 was later signed between said parties (See Exh. B attached to the complaint).

Said contract did not fix a term, Par. 9 thereof reads as follows:

"9. Any party may terminate the employment on one (1) week's notice to the other. Such notice may be delivered or mailed and shall be effective upon such delivery or mailing. Any such notice of termination given either by ROUSANA or by BELMONT shall be deemed a termination on behalf of both of said corporations".

Par. 10 of such contract provides:

"10. Upon termination of GARLAND'S employment, no matter when or how such termination occurs, neither GARLAND nor any person or firm with which he has any connection, whether as stockholder, officer, employee, partner or otherwise, shall either directly or indirectly, (a) solicit business from or do business with any customers with whom ROUSANA or BELMONT did business during the period of GARLAND'S employment, or (b) engage or be employed in the greeting card business for a period of one (1) year in any territory assigned to GARLAND or in which he solicited orders on behalf of ROUSANA or BELMONT during the period of his employment. ROUSANA or BELMONT, in addition to their other remedies, shall be entitled to an injunction to enforce these restrictions."

Defendant entered upon his duties as salesman of greeting cards, pursuant to said contract and acted as such until November 6, 1961, when said employment terminated. (See Par. 6—Complaint.)

Thereafter defendant Garland again engaged in the business of selling greeting cards, in Spanish and English, for Miller Art Company Inc.

He was so engaged on February 16, 1962 when this action was filed.

The purpose of this action is to enforce, as against defendant, the restrictive covenant contained in Par. 10 of the contract supra, and enjoin him from violating the provisions thereof.

At the February 23, 1962 hearing a preliminary restraining order, with notice, to expire ten days thereafter was granted by the Court. By stipulation of the parties and approved by the Court on March 1, 1962, it has been agreed that such restraining order remain in force until this Court decides plaintiff's request for a preliminary injunction.

### THE LAW

The enforcement of contractual stipulations in restraint of trade, such as the one contained in Par. 10 herein sought to be equitably enforced herein by the plaintiff, are not encouraged by the Courts.

"From early times it was the policy of Englishmen to encourage trade in England, and to discourage those voluntary restraints which tradesmen were often induced to impose on themselves by contract. Courts recognized this public policy, by refusing to enforce stipulations of this character. The objections to such restraints were mainly two. One was that by such contracts *a man disabled himself from earning a livelihood with the risk of becoming a public charge,* and deprived the community of the benefit of his labor. The other was that such restraints tended to give to the covenantee, the beneficiary of such restraints, *a monopoly of the trade,* from which he had thus excluded one competitor, and by the same means might exclude others." Circuit Judge Taft in United States v. Addyston Pipe & Steel Co. et al. (C.C.A.6th Cir.) 85 F. 271–279, 46 L.R.A. 122.

The evidence in this action fails to support the idea that any secret process

or information was ever received by the defendant while in plaintiff's employ or has been in any way divulged by the defendant to anybody.

All that appears from the evidence is that defendant is now selling greeting cards to some of those who were customers of the plaintiff, but even as to this the evidence tends to show that they were served by the defendant before he became plaintiff's employee.

Defendant claims and so testified that most, if not all of the customers he served while on plaintiff's employ, were his customers while he was salesman for his brother of the greeting cards manufactured and printed by Miller Art Company Inc., before entering plaintiff's employ, and that it is to these same customers that he is actually selling at present. I give full credit to this statement of the defendant and the supporting affidavits submitted by him.

There is nothing else in the evidence which would tend to place this action within any of the permissible exceptions to the restraint of trade rule recognized by the courts in certain instances i. e. the existence of trade or process secrets, particularly business methods, confidential information gained by the employee by virtue of the employment, and later divulged by the latter to a competitor or any good will lodged in the hands of the employee and taken by him from the employer on the termination of the employment.

In Super Maid Cook-Ware Corporation v. Hamil et al. (C.A.5) 50 F.2d 830, Circuit Judge Hutcheson found that the only issue before the lower Court was the existence in the contract of employment of a restrictive covenant very similar to that involved in this case and the defendants "entry contrary to the restrictive covenants upon the *business* of *selling* aluminum ware" and the "right of plaintiff to enforce these covenants by injunctive decree".

Considering plaintiff's contention that the views of the Texas Courts must control, he further stated:

"We find the distinction unimportant, for it is our view that neither under the laws of Texas, of Illinois, *nor of* any other state *should a court of equity grant its decree to enforce these covenants*". (at p. 831. Emphasis supplied.)

Later on, he added:

"While the petition of appellant does contain many general allegations of secrets disclosed to, and good will lodged in the hands of appellees, the facts as shown by the papers and documents attached to the bill make it perfectly clear that *here no secrets of any kind were disclosed, no confidential information was furnished, no good will was lodged in the hands of the appellees,* nor was any good will taken by them from appellant. The case is merely one of a restrictive covenant, which, depending upon its own terms for its validity, for it has no incidental relation to any contract right of appellants which its enforcement is necessary to protect, *must, because of the general prohibition against such contracts, fall*". (at p. 832— Emphasis supplied.)

The contract which is in question here was executed in New York, where the same rule prevails.

See: Kaumagraph Co. v. Stampagraph Co., 235 N.Y. 1, 138 N.E. 485, at p. 488 H.N. 5, where the injunction was denied by the Appellate Division and the Court of Appeals affirming, said:

"An employee will not be perpetually restrained from working for another except to prevent a breach of confidence as well as a breach of contract".

See also: Clark Paper & Mfg. Co. v. Stenacher, 236 N.Y. 312, 140 N.E. 708, at p. 712 H.N. 6, 29 A.L.R. 1325.

██ Moreover, the contract in question here does not fix a term of employment (see Par. 9 thereof) and therefore the restrictive covenant thereunder (Par. 10) cannot be equitably enforced as plaintiff is requesting here.

See: Super Maid Cook-Ware Corporation v. Hamil, supra, where at p. 832 of 50 F.2d, Judge Hutcheson stated:

"Without guaranteeing to the defendants one day's regular work, without the obligation of the appellant to employ them or pay them anything, upon a seductive promise, of the disclosure of information upon which they may hope to build a profitable line of sales, the appellees are induced to sign a paper which, while it has the general appearance of a contract, but keeps the promise to the ear while it breaks it to the hope. Such a contract, wanting in mutuality, presenting no equitable considerations, a court of equity will not enforce".

See to the same effect: Byram v. Vaughn (D.C.D.C.), 68 F.Supp. 981, where Associate Justice Holtzoff, stated: "There was no provision in the contract requiring Byram to employ Vaughn for any specified period of time. Apparently the employment was at will." (at p. 981.)

Then, at pp. 982 and 983:

"The case at bar, however, presents an additional consideration. In this instance, the agreement of employment contained no undertaking on the part of the employer to continue the employee's services for any specified term. So far as the employer's obligation was concerned, *he could have with impunity terminated the employment and discharged the employee the day or even the minute after the employment commenced.* In other words, *there was no mutuality of obligation.* The question to be determined is whether in the absence of mutuality of obligation, the strong arm of equity should accord to the employer drastic relief by way of an injunction, which would curtail his former employee's freedom of action and possibly restrict and limit him in his opportunity to earn a livelihood." (Emphasis supplied).

See also: Saul v. Thalis (D.C.D.C.) (1957) 156 F.Supp. 408.

After citing with approval Byram v. Vaughn, supra, the court, at p. 412 of 156 F.Supp. said:

"This appears to exhaust the case law in this jurisdiction, and neither diligence of counsel nor I have been able to find any authority to support plaintiff's position on the factual situation involved herein, namely, a contract of employment solely, involving no trade secrets, confidential knowledge, expert training or fruits of employment to give support to the covenant after defendant left the services of plaintiff. No longer is it a covenant ancillary to the purchase of a business and the protection of good will on which reliance might be placed for validity. Nor has defendant acquired something from his employment which needs the protection of the covenant. Its effect, if enforceable after termination of the employer-employee relationship, would be to maintain defendant in a state of servitude to plaintiff, that is, it would require him to work for plaintiff or not work at all in the only business he knows, and the latter would now be his lot until the expiration date".

"Notwithstanding the fusion of law and equity by the Rules of Civil Procedure, *the substantive principles of Court of Chancery remain unaffected*". Stainback v. Mo Hock, Ke Lok Po, 336 U.S. 368, at p. 382, F.N. 26, 69 S.Ct. 606, 93 L.Ed. 741, citing Byram v. Vaughn, supra.

Plaintiff's request for a preliminary injunction must be as it is hereby denied.

The preliminary restraining order entered by this Court on February 23, 1962 and extended under the stipulation and order of March 1, 1962 must be and is hereby vacated.

This action insofar as it seeks to obtain equitable relief against the defendant must be and is hereby dismissed.