UNITED STATES v. INGALLS.
No. 864.

Circuit Court of Appeals, Tenth Circuit.
Dec. 1, 1933.

Richard A. Toomey, of Denver, Colo. (William J. Barker, U. S. Atty., of Santa Fé, N. M., and W. F. Check, Chief Atty., Veterans' Administration, of Albuquerque, N. M., on the brief), for the United States.

Charles A. Reynolds, of Albuquerque, N. M. (M. Ralph Brown, of Albuquerque, N. M., on the brief), for appellee.

Before LEWIS and BRATTON, Circuit Judges, and SYMES, District Judge.

594

SYMES, District Judge.

This is an appeal by the government, defendant below, from a judgment entered on the verdict of a jury holding that the plaintiff became totally and permanently disabled on January 1, 1926, and that his $10,000 policy of war risk insurance matured on that date. Several errors are assigned, but the only question we consider is the correctness of the court's denial of the defendant's motion for a directed verdict at the close of all the evidence; it being the government's contention that the appellee, Ingalls, was not in fact or in law permanently and totally disabled, because he worked continuously at his accepted and chosen profession of a doctor and surgeon, and earned a substantial income during the period that he claims to have been permanently and totally disabled.

Plaintiff's war service, issuance of the $10,000 policy, and that the same was in force up to November, 1927, is admitted.

Plaintiff alleges that he has been totally and permanently disabled ever since 1922, by reason of the following disabilities: Tuberculosis, chronic pulmonary, inoperable ventral hernia, arteriosclerosis, heart trouble, and many other afflictions too numerous to mention.

Plaintiff did not testify in his own behalf, but was called by the defendant, and thereafter testified in rebuttal.

His main case was made by the testimony of Dr. Allison, Dr. Bradley, and Dr. Vogt, and Exhibits 1 to 10, inclusive, being physical examination reports of the plaintiff from the files of the Veterans' Bureau, covering the period from 1922 to date of trial, and Exhibit 11, a report of a neuro-psychiatric examination—the latter made by Dr. Vogt.

Dr. Bradley, a fellow practitioner of the plaintiff in Roswell, N. M., says he had seen him practically every day, professionally and otherwise, when they were both in town, since 1922, and was familiar with his physical condition from September, 1927, the date of his last examination. In 1922 he had some brain lesion, also arteriosclerosis, and no other disability; that "some time last year he had an apoplectic attack," or hemorrhage of the brain, that cleared up. On cross-examination he stated subject had carried on his profession during the last three years, with the exceptions stated; that he did not think he was totally disabled. He practiced with the help of an assistant. He had advised him to go away and quiet down. Sent him to Cincinnati for treatment for two or three months, after which he returned and took up his practice.

Dr. Dwight Allison of Las Cruces, N. M., said he had known the plaintiff since June, 1922. Examined him first in 1923 and two to four times a year since. Found the inoperable hernia, dilated heart, and rales in his lungs, indicating a mild tubercular condition. In 1932 he had a cerebral hemorrhage and was in the hospital. Since 1923 subject had high blood pressure, and in 1927 he advised him to stop work. Should not have worked since he came back from the Army, and was totally and permanently disabled at the time of his last examination.

Dr. Vogt of Albuquerque, N. M., signed some of the reports introduced in evidence. He said the tuberculosis was pulmonary, healed, and not a disability. Examined him in 1927, and in the summer of 1932 he found a partial paralysis on one side of his body, due to hardening of the arteries. In his opinion he had been totally and permanently disabled since 1926. On cross-examination he said: "My opinion is based purely upon a medical proposition. I did not take into consideration the activities of the plaintiff;" that the principal disabling condition was the hernia. The other disabilities were not material.

The reports of the Veterans' Bureau examinations, made for compensation and other purposes, indicate most of the symptoms claimed in the complaint. Exhibit 1, made October 28, 1930, states plaintiff was permanently and totally disabled; that no physical defects were noted at the time of discharge, September 24, 1919.

Exhibit 2 is a report of an examination in 1924, and showed the hernia. Exhibit 3, a report apparently made about December, 1931, disclosed nothing serious except the hernia, slight impairment of the nervous system, and that subject was discharged from the hospital at his own request.

Exhibit 4, examination in 1932 at Beaumont General Hospital, treated for hemiplegia, a palsy that affected one side of the body, but after a short time patient returned to normal. It was not thought he was able to return to the practice of medicine. Discharged in June, 1932, with maximum improvement. Some indication of syphilis, tuberculosis arrested, hernia same as before.

Exhibit 5, an examination at the Beaumont General Hospital in 1931, notes general diagnosis of cerebro-spinal syphilis, hardening of the arteries, hernia, arrested tuberculosis.

Plaintiff's Exhibits 6, 7, and 8 disclose similar findings, and that subject's chief com-

plaint (1928), was hernia, necessitating a retention apparatus. Exhibit 9 (1926), apparently recommended a total and permanent rating, in view of inoperable hernia. Exhibit 11, the neuro-psychiatric examination made by Dr. Vogt in 1922 for compensation, gave a diagnosis of arteriosclerosis cerebral. Prognosis: Guarded.

The government first called the plaintiff himself, who testified that he had been a practicing physician for 25 years, had been medical examiner for the Veterans' Bureau from 1920, up to July or August of the year of trial, at the rate of $2,400 a year for several years, and then at $1,200; that he had regular employment as the medical officer for the New Mexico Military Institute for 22 years, taking care of the cadets. In 1930 he was made supervisor of the federal census for 90 days, receiving a large compensation. In his application for this position he certified he was physically able to discharge the duties, and that his only disability was the ventral hernia.

Sister Tarcicia (p. 79), stationed at St. Mary's Hospital, testified the plaintiff had been attending surgeon at the hospital since 1911, and had a better practice than other physicians; that the number of his patients in the hospital for different years ran from 81 one year to 124 in 1931.

Dr. Beeson, a physician of Roswell, testified he knew plaintiff for 25 years, and has seen him in connection with cases; that he never complained of disability.

The plaintiff's income tax returns for the years 1926 to 1930, inclusive, showed that his professional income for 1926 was over $6,000, 1928 over $15,000, 1929 over $16,000, and for 1930 one half of his income, over $9,000 (the other half reported by his wife). In his applications for reinstatement of his government insurance, two made in 1923, two in 1924, and one in 1925, the plaintiff certified that he was not totally and permanently disabled. Furthermore, plaintiff served on active duty under a reserve commission in the United States Army at intervals from 1922 to 1927, receiving full pay, and kept his office open for the practice of medicine, with only a few absences during most, if not all, the time he claims to have been disabled.

The government also introduced Exhibits P and Q, examinations of the plaintiff by medical boards at the time of his discharge from the hospital in May, 1932, these showing a diagnosis of hardening of the arteries, hernia, arrested tuberculosis, etc., and that: "The amount of pathology found as indicated in the diagnosis above was out of proportion to the amount of symptoms complained of by the patient. * * * That the diseases found are permanent in nature, and could at any future time become cause for total disability." But "that in the absence of symptoms he cannot be considered incapacitated, and considering the fact that this patient has been able to continue a gainful occupation, it is believed that he is not totally disabled at present."

It is not shown that the definition of total and permanent disability that we are bound to apply was read to the plaintiff's medical witnesses. In fact, Dr. Vogt said his opinion was purely a medical proposition and did not take into consideration Ingall's activities; that his recommendation was based on the Veterans' Bureau rating schedule that permitted a total and permanent disability rating "regardless of whether or not totally and permanently disabled in fact."

This testimony calls attention to the fact that the examinations and findings of the Veterans' Bureau are made according to a so-called "rating scale" that allows a certain percentage of disability for each ailment found, varying according to the extent thereof. The total of these percentages is the amount of disability, regardless of the subject's activities.

The examinations evidenced by Exhibits 1 to 10, inclusive, were made for compensation or purposes other than war risk insurance. They are competent evidence, perhaps, in an action on a war risk insurance policy, of the existence at the time indicated of the ailments specifically found, such, for instance, as the arrested tuberculosis, inoperable hernia, arteriosclerosis, arthritis, etc. But any opinions contained therein as to the physical condition of the subject are wholly immaterial, at least until it is shown that those expressing such opinions had in mind the definition of total and permanent disability promulgated by the Veterans' Bureau under date of March 9, 1919.

The plaintiff's case rests mainly upon the medical examinations, two of which only suggest total and permanent disability. Two of his medical witnesses testified he was, while the other, Dr. Bradley, says he was not. All the evidence shows the tuberculosis to be arrested, and that the only disability of any moment is the hernia. The plaintiff continuously practiced medicine for many years, enjoying an unusually profitable practice, considering the size of the town he resided in. In addition, he held responsible positions with

the government, for which he was well paid, and in order to obtain which he certified on more than one occasion he was not disabled.

The rule by which the correctness of the court's ruling on the motion for a directed verdict is to be tested has been variously stated. Judge Sanborn defines it in Motey v. Pickle Marble & Granite Co. (C. C. A.) 74 F. 155, 157, as follows: "It is the duty of the trial court at the close of the evidence to direct a verdict for the party who is clearly entitled to recover, where it would be its duty to set aside a verdict in favor of his opponent if one were rendered."

Judge Lurton of the Sixth Circuit, in Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, 74 F. 463, cites exhaustively the English and American authorities, and the thought running through all is found in the quotation (page 469 of 74 F.), from the opinion of Mr. Justice Miller in Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780: "That in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." That this is still the law, see Gunning v. Cooley, 281 U. S. 90, at page 94, 50 S. Ct. 231, 74 L. Ed. 720, and Penna. R. Co. v. Chamberlain, 288 U. S. 333 at page 343, 53 S. Ct. 391, 77 L. Ed. 819.

It is true, in the instant case, that no motion was made at the close of the plaintiff's evidence, and at that point a prima facie case may have been made; but this, according to Justice Harlan in Travelers' Insurance Co. v. Randolph (C. C. A.) 78 F. 754, at page 759, will not of itself preclude such a motion at the close of all the evidence, for "it often occurs that the evidence on behalf of a defendant, in connection with that on behalf of the plaintiff, will justify a peremptory instruction to find for the defendant, when such an instruction would not have been authorized by the prima facie case made by the plaintiff's proofs."

The burden was upon the plaintiff to show that it was "impossible" for the assured to carry on a gainful occupation continuously. This word must be given its well-accepted meaning, and we are of the opinion that the evidence conclusively refutes the claim that the plaintiff was unable to do what he actually did do, and that reasonable men cannot differ on this question. As Judge McDermott says in U. S. v. Perkins (C. C. A.) 64 F.(2d)

243, 244: "The fact of this steady, continuous, profitable employment is an unanswerable refutation to any claim that he was totally disabled during the years of that employment."

This court has held, in Nicolay v. U. S., 51 F.(2d) 170, that neither the court nor the jury is permitted to credit testimony which is positively contradicted by physical facts. See, also, Roberts v. U. S. (C. C. A.) 57 F. (2d) 514; U. S. v. Perkins, supra, and U. S. v. Hammons (C. C. A.) 66 F.(2d) 912.

Reversed and remanded.