## FERREYROS v. FOX THEATRES, CORPORATION.

### No. 5872.

Court of Appeals of the District of Columbia.
Argued Nov. 7, 1933.
Decided Dec. 11, 1933.

Rehearing Denied Jan. 2, 1934.

Jo. V. Morgan and Woodson P. Houghton, both of Washington, D. C., for appellant.

Edwin C. Brandenburg and Louis M. Denit, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a personal injury case in which the trial court instructed a verdict for defendant.

Appellant is a professional dancer and had been engaged by appellee, for a week prior to his injury, for a Spanish dancing act on the stage of the Fox Theatre in Washington. He was hurt at the conclusion of his last performance.

There was provided at the theater as a part of the stage appliances an elevator or lift, the top or floor of which, ordinarily, formed a part of the floor of the stage proper. The floor of the lift was large enough to hold at least fifty persons. It was so operated that it could be raised or lowered above or beneath the stage floor level as desired. When neither lifted nor lowered, it was on an exact level with the floor of the stage and formed part of it.

As part of appellant's concluding act, he and other actors, variously estimated by the witnesses to be from fifty to one hundred, took their positions upon steps which had been placed for that purpose on the floor of the lift. The lift was then elevated above the stage floor level, and the actors, who were then on steps placed in tiers on the lift, sang the chorus of a popular song, and upon its completion the curtains were closed and the lift descended until its floor reached the stage floor, when it stopped. As a part of appellant's twenty-eighth performance during that week, and in the same manner and under the same conditions as on the preceding twenty-seven performances, appellant and his partner took their places with the other actors on the steps of the lift, which was elevated and lowered as described above. While the lift was descending and before it had reached the floor level of the stage and while the stage itself was dark, appellant stepped from the lift to the stationary portion of the stage floor, intending to go to his dressing room. He was injured as he returned to the lift to recover a musical instrument he had left there.

The performance in which appellant and other actors were engaged was followed by talking pictures, and to arrange the mechanical devices to carry out the sequence of events in accordance with the program, it was necessary that the lights backstage should be turned off when the curtain was drawn at the conclusion of the act in which appellant took part. The immovable portion of the stage between the lift and the curtain was approximately six feet wide, and, during this momentary darkness, stage hands and mechanics moved Movietone apparatus into this position in front of the lift. As soon as this was done, the lights backstage were turned on, but appellant and most of the other actors were in the habit of leaving the lift while the stage was still darkened.

On the occasion in question appellant, after stepping off the lift, turned to reach for his castanets which he had left on a bench

on the lift, and in so doing the toes of one of his feet were caught between the stationary portion of the stage and the descending lift.

Appellant claimed that the elevator was, as constructed, without reasonable safeguards and thus was a dangerous appliance, and as used in connection with the stage made the latter an unsafe place.

We have therefore had recourse to the evidence to determine if, on the subject of unsafe place, the evidence was sufficient for submission to the jury.

■■■ The rule in the federal courts in relation to the right of a court to withdraw a case from the jury is that whenever the evidence is clearly such that if a verdict were rendered for one of the parties the other would be entitled to a new trial, it is the duty of the judge to direct the jury to find according to the views of the court. Penna. R. Co. v. Chamberlain, 288 U. S. 333, 343, 53 S. Ct. 391, 77 L. Ed. 819. On the other hand, it is also the rule that on a question as to the existence of negligence, if the facts are such as that fair-minded men might honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 74 L. Ed. 720.

■■ Tested by these rules, we are of opinion that plaintiff (appellant) failed to prove a case of unsafe place. Taken as a whole, plaintiff's evidence tends to show that at the moment of the injury the stage was so dark and the lift operated so smoothly that it was impossible for appellant to know when it had reached the stage level. In these circumstances appellant claims that it was negligence on the part of appellee not to have provided barriers or gates which would have prevented such an injury as did occur, but there is nowhere in the evidence any testimony as to whether barriers or protective devices could have been used or installed on the lift or underneath it. There was evidence to the effect that there was a ledge attached to the bottom of the lift and running parallel with the stage and located three-fourths of an inch back from the outer edge of the lift; but how it was constructed, what its purpose was, or why it was placed there, is left wholly to conjecture. The mechanism of the lift itself was not explained by the evidence of the witnesses, but in appellant's brief we are told that two screws, operated electrically, are attached to its bottom side by which its movement up and down is controlled. But there is no evidence of the height to which the platform is lifted or lowered, or whether when lifted there is left an open space or well underneath the elevated part. No testimony of any kind was offered to show what sort of protective devices should have been installed, or, considering the uses for which the lift was constructed, could have been provided, to insure greater safety to the actors on the stage, nor was any evidence introduced to show that, in the proper construction of similar stage platforms, gates or fences around the lift when in operation are either usual or practical. To have submitted to the jury, therefore, the question on which appellant rests his case—the lack of safety devices around the lift—would have been to invite the application of the individual views of jurors to a matter as to which there was no evidence, expert or otherwise, and this would have been justifiable, if at all, only on the theory that the lift was itself a simple instrumentality and the objects and purposes of its installation and the manner and necessities of its use in the accomplishment of those objects and purposes so well understood as to be a matter of general knowledge. Obviously this theory cannot be sustained, and this is true, if for no other reason, because the place in which the lift operated was the stage of a theater. It was intended and used for the purpose of enhancing the spectacular effect of the performance. It was part and parcel of the stage machinery—familiar enough to an actor but wholly unfamiliar, either in design or mechanism or in its shifting or changing conditions, to the average layman. The situation is wholly unlike the surroundings in the case of an elevator in a store or office building in which both the dangers and the necessary safety devices may be said to be generally known. Here, as we have already said, the record disclosed not a single jot or tittle of evidence by which the jury could have determined what reasonable or proper safeguards could or should have been installed.

In these circumstances and with no evidence that the lift was not constructed in the usual manner or as operated and used was per se dangerous, the court below was right in refusing to submit the case to the jury, for without such evidence it is obvious that appellant failed to make out a prima facie case.

Affirmed.

ROBB, Associate Justice, dissents.