## WARDMAN v. WASHINGTON LOAN & TRUST CO.

### No. 6736.

United States Court of Appeals for the District of Columbia.

April 12, 1937.

Daniel Thew Wright, of Washington, D. C., for appellant.

George P. Hoover, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

An appeal from a judgment based on a directed verdict in the lower court.

The action below was brought by Harry Wardman, as plaintiff, against the Washington Loan & Trust Company, a corporation, as defendant, to recover payment for services alleged to have been rendered by plaintiff for defendant as a real estate agent.

In the declaration the plaintiff alleged that the defendant was trustee under the last will and testament of Henry Dickson, deceased; that by the terms of the will the testator gave to Mary Ann Busby a life estate in certain property owned by him situate in Nice, France, known as the Hotel Busby; that by the terms of the will the defendant was authorized and empowered as trustee so soon after the decease of Mrs. Busby as was practicable to sell and dispose of the real estate and to make a prescribed distribution of the proceeds; that at the times mentioned in the declaration the plaintiff was a real estate broker; that in August, 1925, the defendant empowered and requested plaintiff to endeavor to interest one George Busby of

Nice, France, to purchase the real estate aforesaid at the price of $100,000, and agreed to pay plaintiff 10 per centum of the purchase price should George Busby purchase the property; that plaintiff spent much time and effort to interest Busby and induce him to purchase the property, had much correspondence with him and went personally to Nice, France, on two occasions to confer with him at great expense, solely to interest him in the purchase; that afterwards about April 1, 1933, the defendant consummated the sale of said property to the said George Busby at and for the purchase price of $100,000, but defendant has failed to pay plaintiff the sum of $10,000 or any sum whatever, for his services rendered in that behalf.

The defendant by plea duly filed admitted that it was a trustee under the last will and testament of Henry Dickson, deceased; that at the time of Dickson's death he was the owner in fee simple of the real estate referred to by plaintiff situated at Nice, France, and known as the Hotel Busby; that by the last will of the testator he devised a life estate in the property to Mrs. Mary Ann Busby, and provided that upon her death the defendant as trustee was authorized and empowered to sell and dispose of the real estate and distribute the proceeds as in the will was provided. Defendant admitted that in August, 1927, the real estate was subject to a lease which would expire about the year 1933, and denied that at that time or at any time defendant requested plaintiff to endeavor to interest George Busby of Nice, France, to purchase the Busby Hotel upon the death of Mary Ann Busby, either during or after the expiration of the lease, at the price of $100,000, and denied that it agreed to pay plaintiff 10 per centum of the purchase price should Busby purchase the property; denied that plaintiff spent much time and effort to interest George Busby to purchase the property, and had correspondence with him, or went to Nice on two separate occasions to confer with Busby with the knowledge of the defendant; and denied that on or about August 1, 1933 it consummated a sale of the property to Busby at the price of $100,000; and denied that it is indebted to plaintiff in any sum whatever.

The case was tried to the jury and was submitted by plaintiff upon plaintiff's own testimony alone. At the close of his testimony on motion of defendant the court directed a verdict in favor of defendant, and entered judgment thereon. Whereupon the present appeal was taken.

The appellant assigns as error the order of the court directing the jury to return a verdict for defendant at the close of plaintiff's testimony, and also to two several rulings of the court respecting evidence tendered at the trial, which will be spoken of hereafter in this opinion.

Upon a careful reading of the record, we are convinced that the plaintiff's testimony given in the lower court justified the order of the court directing a verdict for the defendant.

The plaintiff testified in substance that in the summer of 1925 he was asked by Mr. Edson, an officer of the defendant corporation, whether he was going to London soon, and he replied that he was going within the next 30 days. He was asked if he knew the Hotel Busby at Nice, and answered he had never heard of it. Continuing the conversation he was asked if he thought he could do anything with the property. He said that he would go down there and try. When asked how much commission he wanted, plaintiff replied: "I want ten per cent and I will pay all my own expenses"; and thereupon Mr. Edson said: "You can go ahead and sell this property, and if you get $100,000 for it we will pay you 10 per cent or $10,000."

The plaintiff testified that within 30 days thereafter he went to Nice, located the Hotel Busby, and that he wanted to make a deal with George Busby for the property and sell it under his contract with the estate and for no other purpose; that he talked with Busby and made an effort to sell the property to him, but Busby said he would not name any price, nor would he deal with plaintiff at all about it; that in 1926 plaintiff went to Nice a second time and took with him an interpreter inasmuch as plaintiff was unable to speak French; that on this visit Busby said, "I will give you $100,000 for it," and went with plaintiff to see the lawyer for the defendant corporation to draw a contract, but "for some reason or another he did not draw the contract" and plaintiff again failed to make a sale of the property to him; that plaintiff afterwards communicated by letter with Busby on various occasions and in January, 1927, went to Nice a third time, again taking with him an interpreter, but again failed to make any contract with Busby who refused to make an offer for the prop-

erty; that the plaintiff made no other visit to Nice although he corresponded with Busby at times concerning the matter; that on April 16, 1927, plaintiff entered into a written contract with the defendant whereby he was given an option to purchase the property in question at the price of $100,000 payable upon certain specified terms, the price to be net to the company without deduction for any commission, expense of conveyancing, examination of title, attorney's fees, or for any tax imposed by the United States or France, all of which was to be assumed and paid by the plaintiff. The option was limited to a period of 90 days from the date thereof "time being of its essence," and settlement was to be made at such place as defendant might designate. Immediately after securing the option plaintiff sent a cablegram to Busby, reading as follows: "Sorry your property has been sold subject to your mother's estate and your lease." The option expired without a sale. The plaintiff's testimony fails to show any effort on his part to sell the property after that time, although he states that he afterwards talked to Mr. Edson at times about the property, and that in the year 1933 he was told by Mr. Meem that "We have sold the property."

■■■ We are of the opinion that the plaintiff's testimony fails to sustain his claim for a commission upon this sale. The agreement between the parties as testified by the plaintiff was that plaintiff was to sell the property and if he secured $100,000 for it he was to receive a commission of 10 per centum. The plaintiff however did not secure the buyer for the property and therefore did not become entitled to the commission.

In Battle v. Price, 63 App.D.C. 326, 72 F.(2d) 377, 378, we said: "To become entitled to a commission, a broker must find a purchaser who is able and willing to buy on the identical terms offered by the seller. Heurich v. Sullivan, 52 App.D.C. 95, 281 F. 599; Shinn v. Evans, 37 App.D.C. 304; Beougher v. Clark, 81 Kan. 250, 106 P. 39, 27 L.R.A.(N.S.) 198. This the plaintiff did not do."

■■■ Inasmuch as the testimony of plaintiff utterly failed to sustain his claim it became the duty of the court to withdraw the case from the jury.

In Ferreyros v. Fox Theatres Corporation, 63 App.D.C. 3, 68 F.(2d) 575, 576,

we said: "The rule in the federal courts in relation to the right of a court to withdraw a case from the jury is that whenever the evidence is clearly such that if a verdict were rendered for one of the parties the other would be entitled to a new trial, it is the duty of the judge to direct the jury to find according to the views of the court. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 77 L.Ed. 819."

In Wilson v. Borden, 61 App.D.C. 327, 62 F.(2d) 866, 868, we said: "Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury. People's Savings Bank v. Bates, 120 U.S. 556, 562, 7 S.Ct. 679, 30 L.Ed. 754; Southern Pacific Company v. Pool, 160 U.S. 438, 440, 16 S.Ct. 338, 40 L.Ed. 485."

■■ Moreover the contract alleged by plaintiff whereby he was to sell the property upon a commission was discharged by the option which he subsequently took upon the property. In 3 Elliott on Contracts, 10; § 1865, it is said: "A contract may also be discharged or modified by a new contract inconsistent with the earlier contract so that they cannot subsist together, even though there is no express agreement that the new contract shall have that effect. As a general rule, where the new contract is in regard to the same matter and has the same scope as the earlier contract and the terms of the two contracts are inconsistent either in whole or in a substantial part, so that the cannot subsist together, the new contract abrogates the earlier one in toto and takes its place. * * *"

■ In the course of plaintiff's examination as a witness he was unable at one time to fix the date of a certain transaction, whereupon he said: "The first time I heard it had been sold to this man, well, the first time—it would be about the time that you have a copy of Mr. Peter's letter. That is as near as I can make it." Thereupon the following occurred:

"By Mr. Hoover:

"Q. The letters are not evidence in this case, Mr. Wardman. I have no objection to letting Judge Wright examine the letters with a view of fixing the date, if he wants to do that. Do you want to do that?

432

"Judge Wright: I do not know whether it would help.

"Mr. Hoover: I am not offering the letters in evidence. The letters are of a type that are not admissible in evidence under well known rules of law. But I say I have no objection to fixing the date by that.

"Judge Wright: Suppose you let him see that. I do not know what the date was.

"Mr. Hoover: I will hand it to him to refresh his recollection as to the date, without the letter being offered in evidence (handing paper to witness)."

This letter was subsequently offered in evidence by the plaintiff who contended that the use of it by defendant in the cross-examination of plaintiff made it admissible in evidence. The court sustained defendant's objection to its introduction, and plaintiff excepted. We cannot sustain plaintiff's contention. The contents of the letter were not admissible unless made so by the cross-examination. Plainly the defendant waived no rights concerning it by permitting plaintiff to use it in order to fix a date, at the same time notifying the court and the plaintiff that the letter was not thereby offered in evidence.

A third assignment of error relates to testimony which was tendered concerning a conversation between plaintiff and Mr. Edson as follows: "Q. In the last conversation which you had with Mr. Edson, the last personal conversation, did you and he talk at all about that lady" (referring to Mrs. Busby). An objection to this question was sustained, whereupon plaintiff tendered the following as an answer expected to be given to the question: "There is no hurry about it, anyhow, until the woman dies, and let us let the matter drag along." In our opinion the ruling of the court excluding this answer was not erroneous. The plaintiff had already testified that in March or April of 1933 he was informed that the property in Nice had been sold; that about six months later he saw Mr. Edson about the matter; that Mr. Edson was very ill and was not "particularly normal," and plaintiff had to leave him because he appeared to be so angry that plaintiff thought he would have apoplexy; that in this conversation plaintiff said to Mr. Edson, " 'I understood you have sold this property and this commission is coming to me. There has been at no time that this thing has been going along—I know you are working on time—there has never been a time when you have not said you would take care of me when the deal was through,' and all I went to see him was to pay me my expenses. He said 'You go over to see Mr. Peter'; he said, 'There are other people looking at this property besides you.' As to whether that is all the conversation I had with him, I had to leave him I thought he would die on my hands."

Plaintiff's testimony is somewhat indefinite as to dates, but it may be inferred that the conversation just recited was the last one which plaintiff had with Mr. Edson, and that plaintiff at the time knew that the sale had been made, and that his purpose in seeing Mr. Edson was to secure payment of his expense in attempting to make the sale. In view of this testimony the court was justified in excluding the tendered testimony that Mr. Edson had told him: "There is no hurry about it anyhow, until the woman dies, and let us let the matter drag along." This would be a flat contradiction of plaintiff's preceding statement, and the refusal of the court to admit the evidence was not prejudicial error.

The judgment of the lower court accordingly is affirmed with costs.