John A. SNEAD, Administrator of The Estate of Kermit Norma Elswick, Appellant,

v.

The NEW YORK CENTRAL RAILROAD COMPANY, a Corporation, Appellee.

No. 6791.

United States Court of Appeals Fourth Circuit.

Argued June 11, 1954.

Decided Oct. 13, 1954.

Soper, Circuit Judge, dissented.

Paul J. Kaufman, Charleston, W. Va. (Ivor F. Boiarsky and Benjamin A. Ritchie, Charleston, W. Va., on the brief), for appellant.

Robert H. C. Kay, Charleston, W. Va., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by plaintiff from a judgment for defendant non obstante veredicto in an action to recover damages on account of wrongful death. Decedent was killed when an automobile in which she was riding skidded from a mountain road in West Virginia and after falling down a steep hillside landed on the railroad track of defendant where it was struck by one of defendant's freight trains. Plaintiff contended that defendant was guilty of negligence in not stopping the train before it struck the automobile and that this negligence was the cause of decedent's death. The case was heard before a jury which found a verdict for plaintiff in the sum of $7,500. When the verdict was returned the defendant moved that the verdict be set aside and a new trial granted on grounds to be later assigned. The trial judge thereupon announced that he was convinced that the verdict was erroneous and that he would set it aside and enter a directed verdict for defendant. He stated that he was satisfied that the decedent was killed as a result of the falling of the car and not of its being struck by the train and that he did not think that negligence in the operation of the train had been shown. The question presented by the appeal is whether there was sufficient evidence that decedent's death was due to the negligence of defendant to take the case to the jury. We think that there was.

On the question of defendant's negligence, there was evidence tending to

show that the automobile was upon the tracks at a point where it could be seen for a distance of twelve hundred feet or more from the direction from which defendant's train was approaching, that the train was moving very slowly, just having left a station, and that it was going up a slight grade. The speed was estimated at from ten to fifteen miles per hour and the speed limit on that part of the track was shown to be not exceeding fifteen miles per hour. Caroline Elswick, who was riding with her husband and the decedent in the automobile, got out of it in some way, although she does not remember how, and ran 400 feet up the track towards the approaching train waving her arms and signalling frantically for it to stop. Other persons across the river from the scene of the accident also attempted to signal the train and pointed in the direction of the automobile on the tracks. The fireman saw the signals given by these persons and both he and the engineer saw Mrs. Elswick running up the track and signalling to them. Mrs. Elswick testified that the train sounded its whistle as it rounded a curve and came in view of the wreck 1250 feet distant. Defendant contends that this signal was given when the train was pulling out of the station at Swiss; but it was for the jury, and not the court, to resolve this conflict in the evidence and say what conclusion should be drawn from it.

■ Mrs. Elswick further testified that after running 400 feet up the track and finding that she could not stop the train she ran back to the car and had reached it before it was struck and that the speed of the train was not decreased in the meantime. There was testimony, furthermore, that even after the engineer discovered that there was danger ahead he did not apply the emergency brake immediately but first used the service brake which is used at station stops.

There was further evidence from which it might properly have been concluded that the emergency brakes were not applied as promptly as they should have been. As the front of the train went only a few feet beyond the car, prompt application of the emergency brakes might have avoided the collision, and it was for the jury to say whether due care was exercised in this regard.

■■ If plaintiff's version of the evidence be accepted, there is no adequate explanation as to why the train, moving as slowly as it was, could not in the exercise of reasonable care have been stopped before striking the car after those in charge had been alerted to the fact that there was danger ahead. At all events, it was for the jury to say, in the light of this evidence, whether due care was exercised. Even if it be assumed that defendant owed no greater duty to plaintiff than to an ordinary trespasser,[1] the jury might reasonably have found from the evidence that those in charge of the train did not exercise due care after they had been alerted to the fact that they were approaching a situation fraught with danger. See Washington and Old Dominion R. R. v. Taylor, 188 Va. 458, 50 S.E.2d 415, 419, where failure to exercise due care to avoid injury to a trespasser after being alerted that there was danger by signals very much like those in evidence here was held a question for the jury.

■ The question as to whether the death of decedent was the result of the falling of the car on the track or of its being struck by the train was even more clearly for the jury. There was evidence on the part of plaintiff that the car backed slowly down the hill, being impeded by brush and small trees, and that its course was stayed for a brief interval by a tree at the bottom of the hill just before it slid over the edge of the cut and dropped to the track below. There

1. That decedent having been thrown upon defendant's track involuntarily was not an ordinary trespasser, certainly not a trespasser in the sense in which the term is ordinarily used, see A.L.I. Restatement of Law of Torts, vol. 1, p. 361; 52 Am. Jur. p. 840; Feiges v. Racine Dry Goods Co., 231 Wis. 270, 285 N.W. 799, 801, 122 A.L.R. 272, 275.

was evidence that the car came down on the track rear end foremost, that it was not damaged appreciably as a result of the fall and that its occupants were not seriously hurt. Certainly Mrs. Elswick was able to get out of the car and run down the railroad track and her husband was not killed but testified at the trial. Mrs. Elswick testified that decedent was not bleeding and was not apparently hurt when seen immediately after the car landed on the tracks but was alive and praying. The train smashed in the front of the car, ripped off its top and crushed it against the foot of a rock wall. There was evidence from which the jury could reasonably have found that decedent's death resulted from this collision. There was evidence in contradiction of this, but the contention, strenuously pressed upon us, that decedent was thrown through the windshield when the car fell on the tracks is purely speculative and is contradicted by the direct testimony of both Mrs. Elswick and her husband.

 "It is well settled that on a motion for a directed verdict or on motion for judgment n. o. v. based on such motion, the evidence must be considered in the light most favorable to the party against whom the directed verdict or the judgment n. o. v. is asked, that any conflict in evidence must be resolved in his favor and that every conclusion or inference that can be legitimately drawn therefrom in his behalf must be drawn." Burcham v. J. P. Stevens & Co., 4 Cir., 209 F.2d 35, 37. The rule differs from that applicable on motions for new trial, where the judge may and should set aside the verdict and grant a new trial where the verdict is contrary to the weight of the evidence, or in his opinion is based upon evidence that is false or where he thinks such action necessary to prevent a miscarriage of justice. We pointed out the distinction in Garrison v. United States, 4 Cir., 62 F.2d 41, 42, from which we quoted in the later cases of Roedegir v. Phillips, 4 Cir., 85 F.2d 995, 996, and Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 354, as follows:

" 'Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice. See Felton v. Spiro, 6 Cir., 78 F. 576. Verdict can be directed only where there is no substantial evidence to support recovery by the party against whom it is directed or where the evidence is all against him or so overwhelmingly so as to leave no room to doubt what the fact is. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. Verdict may be set aside and new trial granted, when the verdict is contrary to the clear weight of the evidence, or whenever in the exercise of a sound discretion the trial judge thinks this action necessary to prevent a miscarriage of justice.' "

 For the reasons stated, the judgment n. o. v. must be set aside; but because the judge, in entering the judgment, indicated that in so doing he was activated by reasons which would have justified him in entering an order setting aside the verdict and granting a new trial, we think that the case should be remanded to him with power to enter such order if he thinks proper, since we are without power to enter it ourselves. It is true that the judge denied motion for new trial in connection with entering the judgment n. o. v., but the statement in the order for entry of judgment that

such motion was without merit shows clearly that this had reference to a written motion filed after verdict asking a new trial on the ground of an inquiry made by one of the jurors. If the judge is of opinion that the verdict of the jury was against the weight of the evidence or based on evidence that was false, he should set it aside and grant a new trial, even though direction of a verdict or judgment n. o. v. was not warranted.

The judgment n. o. v. will accordingly be set aside and the case will be remanded with direction that the judge who tried it pass upon the motion for a new trial as above indicated and that such further proceedings be had in the case as may be appropriate in the premises.

Reversed and remanded with directions.

SOPER, Circuit Judge (dissenting).

The accident happened under the most unlooked for and extraordinary circumstances. The heavy train of 76 freight cars, loaded with coal and drawn by a double unit Diesel engine, was proceeding on a slight upgrade at the rate of 15 miles per hour on a track which ran in a narrow space between a mountain on one side and a river on the other. The automobile had just fallen from the mountain side and lay on its right side between the mountain and the tracks, with its top extending a short distance over the rail next to the mountain. There was no access to the tracks from either side at the point of the accident or at any point in either direction for a long distance, and there was no reason for the trainmen to expect to encounter any person or animal on the tracks in this vicinity. Certainly it was beyond reason to foresee the presence of an overturned automobile.

It was after 5 P.M. on March 23, 1953, on a dim and misty evening. The automobile had fallen from the cliff before the train rounded a curve 1250 feet away. The uncontradicted evidence is that the trainmen did not see the car until it was too late to avoid the collision. However, at the moment of collision the speed

of the train was diminishing, so that it stopped a few feet, less than a car length, beyond the automobile. It stopped because appropriate steps had already been taken, since the trainmen had been alerted to the fact that there was trouble ahead. The fireman, who sat on the river side of the engine, first became aware that something was wrong when he saw a man across the river waving his arms and pointing down the track ahead of the engine. The fireman at once notified the engineer and told him there must be something on the track. The engine was then about 600 feet from the car. The engineer immediately took the following steps. He made a reduction in the air pressure to slacken the speed of the train, applied the emergency brake, put sand on the track, rang the bell, and blew the whistle. These steps were taken in rapid succession, if not simultaneously, and the uncontradicted testimony of the engineer is that nothing else could have been done. It is now suggested that the engineer should have put on the emergency brake before he did anything else; but there is no testimony by any person that this procedure would have been feasible or that the course adopted was not usual or proper, or that the trainmen did not act with due care in view of the facts then known to them.

All of these precautions were taken before the trainmen caught sight of the girl who, according to her testimony, ran up the track in her stocking feet in the direction of the train for a distance of 400 feet waving her arms. When they did see her, the engineer waved her off the track and then, according to her testimony, she ran back a distance of 400 feet and reached the car before the engine struck it. The attention of the trainmen was directed toward her actions and they did not see the automobile until later. When they did see it there was nothing more that could be done. All of the procedures for the stopping of the train had already been taken by the time they saw the girl. She testified that she did not notice any slackening of the speed of the train, and hence it is said that there was

some evidence of negligence to go to the jury. Her testimony, however, is obviously without probative force for it is conceded that the train stopped only a few feet beyond the car and in this space the heavy train of 76 loaded cars, running at the rate of 15 miles an hour, could not have been stopped if the brakes had not been previously applied. Moreover, she was so shaken by her terrifying experience of falling from the cliff in the car, which she was driving, that according to her own testimony she found herself standing by the track after the fall without knowing how she had gotten out of the car.

It is established under the law of West Virginia that a railroad company owes no duty to trespassers on the tracks at a point where persons would not be expected to be, except to use ordinary care to avoid injuring them after their presence has been discovered by the operators of the trains. The rule was applied amongst other cases in Raines v. Chesapeake & O. Ry. Co., 39 W.Va. 50, 19 S.E. 565, 24 L.R.A. 226; Huff v. Chesapeake & O. Ry. Co., 48 W.Va. 45, 35 S.E. 866; Tompkins v. Sunday Creek Co., 68 W.Va. 483, 69 S.E. 980; Prok v. Norfolk & W. R. Co., 75 W.Va. 697, 84 S.E. 568; Ballard v. Charleston Interurban R. Co., 113 W.Va. 660, 169 S.E. 524; Barron v. B. & O. R. Co., 116 W.Va. 21; Payne v. Virginian Ry. Co., 131 W.Va. 767, 51 S.E.2d 514; Stokey v. Norfolk & W. Ry. Co., 132 W.Va. 771, 55 S.E.2d 102; Chesapeake & O. Ry. Co. v. Craft, 4 Cir., 162 F.2d 67.[1]

These decisions embody the element of foreseeability in determining what is due care in a given case, and apply the general rule in the law of torts that no one is bound to guard against or take measures to avert that which under the circumstances a reasonably prudent person would not anticipate as likely to happen. In Atchison, T. & S. F. Ry. Co. v. Calhoun, 213 U.S. 1, 9, 29 S.Ct. 321, 323, 53 L.Ed. 671, the court said:

"But, even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight. It has been well said that, 'if men went about to guard themselves against every risk to themselves or others which might, by ingenious conjecture, be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things.' Pollock, Torts, 8th ed. 41."

See also Consumers Power Co. v. Nash, 6 Cir., 164 F.2d 657, 658; Kansas City Southern Ry. Co. v. Pinson, 5 Cir., 23 F.2d 247, 248; Johnson v. Kosmos Portland Cement Co., 6 Cir., 64 F.2d 193, 195; Fort Smith Gas Co. v. Cloud, 8 Cir., 75 F.2d 413, 415, 97 A.L.R. 833; Hale v. Montana-Dakota Utilities Co., 8 Cir., 192 F.2d 274, 276. Restatement of Torts, § 282—Comment g; Restatement of Torts, § 289—Comment b.

The application of this rule by the trial court in the instant case was peculiarly appropriate to the extraordinary circumstances of the accident which happened at a point on the railroad tracks where no person would be expected to be, much less a wrecked automobile occupied by human beings. The situation was so unprecedented that even if it should be

---

1. Many of the cases go so far as to say that the railroad company owes no duty to a trespasser except to do him no wilful or wanton injury after he is discovered; and in Connelly v. Virginian Ry. Co., 124 W.Va. 254, 20 S.E.2d 885, the court held that the railroad had no liability for the death of an unconscious man lying on the tracks, since there was no negligence after his presence was discovered.

deemed possible to draw some inference of negligence on the part of the Railroad Company, it would be so remote and tenuous as to furnish no basis for an adverse verdict. The rule is so well settled in this and other federal circuits as to leave little room for debate.

It is undoubtedly true that the trial judge in the exercise of a sound discretion may grant a new trial, although there was substantial evidence to support the verdict, if he thinks this action is necessary to prevent a miscarriage of justice; but it is not always necessary for him to postpone action until the verdict is rendered. As Judge Parker said in Garrison v. United States, 4 Cir., 62 F.2d 41, 42, the trial judge may direct a verdict when the evidence is so overwhelmingly against one party as to leave no room to doubt what the fact is. Many years ago Judge Walter H. Sanborn in Motey v. Pickle Marble & Granite Co., 8 Cir., 74 F. 155, 157, stated the idea in these words. "It is the duty of the trial court at the close of the evidence to direct a verdict for the party who is clearly entitled to recover where it would be its duty to set aside a verdict in favor of his opponent if one were rendered"; and the Supreme Court, in Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 395, 77 L.Ed. 819, gave authoritative sanction to the rule when it said:

"* * * where the evidence is 'so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury.' * * * The rule is settled for the federal courts, and for many of the state courts, that whenever in the trial of a civil case the evidence is clearly such that if a verdict were rendered for one of the parties the other would be entitled to a new trial, it is the duty of the judge to direct the jury to find according to the views of the court. Such a practice, this court has said, not only saves time and expense, but 'gives scientific certainty to the law in its application to the facts and promotes the end of justice.' * * The scintilla rule has been definitely and repeatedly rejected so far as the federal courts are concerned."

See also Gunning v. Cooley, 281 U.S. 90, 93, 50 S.Ct. 231, 74 L.Ed. 720; Myers v. Reading Co., 331 U.S. 477, 485, 67 S.Ct. 1334, 91 L.Ed. 1615.

These decisons have never been repudiated. On the contrary they have been followed on numerous occasions in this and other circuits. The courts have not only set aside verdicts based on a scintilla of evidence, or speculation, or conjecture, but have reiterated the rule that where the evidence is "so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury." [2]

The decision of the District Judge in the instant case was fully justified.

2. United States v. Ingalls, 10 Cir., 67 F. 2d 593, 596; Ferreyros v. Fox Theatres Corp., 63 App.D.C. 3, 68 F.2d 575, 576; Arnall Mills v. Smallwood, 5 Cir., 68 F. 2d 57, 59; Adams v. Barron G. Collier, 8 Cir., 73 F.2d 975, 977; Chambers v. Skelly Oil Co., 10 Cir., 87 F.2d 853, 856; Wardman v. Washington Loan & Trust Co., 67 App.D.C. 184, 90 F.2d 429, 431; N. L. R. B. v. A. S. Abell Co., 4 Cir., 97 F.2d 951, 958; N. L. R. B. v. Asheville Hosiery Co., 4 Cir., 108 F.2d 288, 292, 293; Daroca v. Metropolitan Life Ins. Co., 5 Cir., 121 F.2d 917, 920; White v. New York Life Ins. Co., 5 Cir., 145 F.2d 504, 509; Gill v. Reveley, 10 Cir., 132 F.2d 975, 976; Floyd v. Ring Const. Corp., 8 Cir., 165 F.2d 125, 129; See also Texas Co. v. Hood, 5 Cir., 161 F.2d 618, 620; Scocozza v. Erie R. Co., 2 Cir., 171 F.2d 745, 747; Eastern Coal Corp. v. N. L. R. B., 4 Cir., 176 F.2d 131, 136; Moore v. Chesapeake & O. Ry. Co., 4 Cir., 184 F.2d 176, 179.