Louis SAUL, Trading as American-A.B.C. Barber & Beauty Supply Company, Plaintiff,

v.

Pasquale J. THALIS
and
Capitol Beauty Supply & Equipment Co., Inc., Defendants.

Civ. A. No. 2346-57.

United States District Court
District of Columbia.

Nov. 5, 1957.

Harry W. Goldberg, Washington, D. C., for plaintiff.

Edmund M. Sciullo and Chester C. Shore, Washington, D. C., for defendant Pasquale J. Thalis.

Joseph Stein, Washington, D. C., for defendant Capitol Beauty Supply & Equipment Co., Inc.

PINE, District Judge.

This is an action in which plaintiff, Louis Saul, seeks an injunction against defendants, Pasquale J. Thalis and Capitol Beauty Supply & Equipment Company, to restrain the former from engaging in the sale of barber and beauty shop equipment and the latter from employing the former as a salesman of such equipment. For convenience, defendant Thalis will be referred to herein as defendant and Capitol Beauty Supply & Equipment Company by its name. A temporary injunction has been issued, and the case comes on for final hearing on the merits. The facts so far as necessary for this decision are as follows: ·

On May 9, 1953, plaintiff was and for many years prior thereto had been engaged in the barber and beauty supply business. His place of business was on 14th Street Northwest and he was engaged in selling a line of goods and equipment known as the Paidar line, for which he had a franchise.

On the same date defendant was and for many years prior thereto and since a youth had been engaged in the same business. His place of business was on 7th Street Northwest and he was engaged in selling a line of goods and equipment known as the Koken line, for which he had a franchise.

Prior to this date plaintiff and defendant had been engaged in a series of negotiations. Defendant was in financial difficulties, and plaintiff was interested in expanding his business, acquiring the franchise for the Koken line of goods and equipment, and also in acquiring defendant's services as a salesman. Defendant was an experienced and successful salesman in this class of business, and his services as a salesman for plaintiff and his removal from competition would be beneficial to plaintiff. Defendant was being pressed by his creditors, particularly the Internal Revenue Service, and it was desirable that he make some arrangement for the payment of his debts.

After negotiations, and on May 9, 1953, with these facts in the minds of both, plaintiff and defendant entered into two contracts, one for the sale of the business to plaintiff, and the other for employment of defendant by plaintiff as a salesman on a commission basis.

In the contract for the sale of the business plaintiff agreed to assume defendant's obligations set forth therein and to pay a sum of money to defendant under a formula which resulted in $2,948.04 being owed by plaintiff to defendant, which was thereafter paid by plaintiff. The contract of sale also provided as a condition to its validity that there should be executed a contract of employment by plaintiff of defendant for a term of years ending July 1, 1958, and containing a restrictive covenant binding defendant until that date.

Thereupon plaintiff and defendant entered into a contract of employment for a term of years ending July 1, 1958, or for approximately five years. Among its other terms, it provided that defendant will receive as compensation 50% of the net profits earned from sales by him, and that during this period he will not engage, except as an employee of plaintiff, in the barber and beauty supply and equipment business within a radius of 50 miles of the District of Columbia, and will not be a member of any firm engaged in the same or similar type of business as that operated by the plaintiff. This employment agreement and covenant were the principal considerations inducing the plaintiff to enter into the contract to purchase the business, inasmuch as it gave plaintiff the benefit of defendant's services, experience and skill as a salesman for the period mentioned, or in the event of defendant's refusing to continue as an employee, removed him from competition with plaintiff. The covenant also provided as an exception that the defendant might go into business for himself after March 1, 1957 provided he did not engage in the sale of Koken barber and beauty equipment.

Early in July 1953 a bill of sale for the business, goods, equipment, etc., was executed by defendant. It also included the same covenant.

On October 24, 1955 plaintiff and defendant entered into another contract of employment of defendant by plaintiff for a period of three years therefrom, and stipulated that the prior agreement dated May 9, 1953 shall be "automatically cancelled" and, shall be considered as "superseded" by the new agreement. It further provided, in lieu of the earlier restrictive covenant, that for a period of three years or until October 24, 1958, defendant will not "engage in any competitive business, side line or undertaking" involving the sale of barber and beauty shop equipment or supplies as sold by plaintiff, and that he will not be a member of any firm engaged in the same or similar type of business. It also provided that defendant shall receive as compensation 60% of the net profits of plaintiff from sales by defendant, and from sales of Koken equipment by plaintiff. Further, it provided that defendant shall be entitled to payment of earned commissions upon consummation of all deals made by him, and shall be permitted to retain deposits obtained by him from customers as down payments to the extent of the commission due to defendant thereunder.

On December 21, 1955 plaintiff and defendant entered into another contract reducing his compensation to 50% which would remain until such time as defendant was no longer indebted to plaintiff, at which time the 60% rate of compensation would again become effective. The 60% rate was never restored.

On April 6, 1956 the parties entered into still another contract to supplement the contract entered into on October 24, 1955 reciting that defendant had not on occasion complied with paragraph 7 of that contract, namely, the provision which permitted him to retain deposits from customers on down payments to the extent of the commission due him thereunder, and providing that defendant will not at any time withhold deposits due to plaintiff except as authorized under the contract of October 24, 1955, and further that if defendant should breach this contract or any other provisions of the contract of October 24, 1955, plaintiff shall have the right to declare that contract and supplement breached, except that defendant will remain bound by the restrictive covenant set forth in the contract of October 24, 1955 for the "balance of said contract."

On February 8, 1957, the parties entered into the last of their numerous written agreements reciting that defendant had withheld deposits and other money due to plaintiff without the knowledge of plaintiff to the extent that the wrongful withholding was not known to plaintiff until complaints were made by customers, and providing that pursuant to the contract of October 24, 1955, as supplemented by the contract of April 6, 1956, the parties agreed that the said agreement is terminated except that the restrictive covenant shall remain in full force and effect. It further provided that in the event plaintiff thereafter reemployed defendant no agreements of any kind respecting such employment shall be binding unless reduced to writing and signed by both parties, and that no oral agreement shall be deemed binding upon either party in the event of such reemployment. Thereafter plaintiff did reemploy defendant who was paid on a job basis until August 8, 1957 when defendant severed relations with plaintiff and became employed by the defendant Capitol Beauty Supply Company engaged in a business competing with plaintiff.

 Plaintiff seeks to enforce this restrictive covenant by injunction, and defendant disputes its validity. In passing upon this question, it is important first to state what this case is and what it is not. It is not *now* a case involving the sale of a business where the seller covenants not to compete with the buyer for a limited time and within a limited territory, which are generally held to be valid and enforceable. This was the situation between the parties until October 24, 1955 when they entered into an

agreement of employment superseding the prior agreement of employment and changing the covenant both as to duration and conditions. The duration was extended and the conditions were made more severe against the employee. Also the territory was not marked out definitely. By that agreement the parties expressly revoked the earlier agreement of employment with its restrictive covenant. They did not expressly revoke the covenant in the bill of sale, but that is revoked as a matter of law inasmuch as the later covenant between the same parties is inconsistent and cannot subsist with the earlier covenant which is thereby abrogated. Wardman v. Washington Loan and Trust Company, 67 App.D.C. 184, 90 F.2d 429; Ward v. Deavers, 92 U.S.App.D.C. 167, 203 F.2d 72. Neither does this case involve an agreement of employment for a fixed time and a covenant not to engage after its termination in the same business for limited time and in a limited territory, which are generally held to be invalid unless some special right or consideration requiring the protection of the covenant is coupled with it. Instead, this case involves an agreement of employment for a fixed term containing a covenant which restricts the employee from engaging in a competing business during the term of employment fixed by the agreement. The validity of such covenant cannot be questioned so long as the employee remains in the employ of the employer. Here, however, save in one respect, the agreement of employment and the employer-employee relationship were terminated by the parties prior to the expiration date. Thus the sole question left for determination is whether the part not terminated, but expressly continued in force, namely the restrictive covenant, can legally survive after the employer-employee relationship ceases. This involves whether the covenant under these circumstances is against public policy as in unreasonable restraint of trade. There are no cases in

this jurisdiction which have been brought to my attention involving this precise point, although there are cases here on the general question. Several have upheld a similar covenant which was ancillary to the purchase of a business,[1] but, as I have stated, such factual situation is not now before the Court. In one of them, however, namely, Cox v. Helvering, 63 App.D.C. 264, 71 F.2d 987, 988, a tax case, the Court of Appeals, in an opinion by Justice Groner, makes the following pertinent statement:

"Generally speaking, a contract to refrain from engaging in a particular business, where the restraint is limited as to time and space, is valid, but this rule is conditioned on the further rule that the stipulation must be ancillary to some lawful contract, such as vendor and vendee, and be reasonably necessary to protect the vendee in the enjoyment of the fruits of the contract. Where the sole object of both parties in making the contract is merely to restrain competition and enhance and maintain prices, the contract is void."

There appear to be two opinions in the Court of Appeals reports relating solely to restrictive covenants in contracts of employment. The earlier is Erikson v. Hawley, 56 App.D.C. 268, 12 F.2d 491. There the plaintiff, an established dentist, specializing in orthodontia, entered into an agreement with defendant, a young man who had then recently graduated in dentistry and had a license to practice dentistry in the District, by the terms of which plaintiff agreed to employ defendant for 5 years on a salary basis and defendant agreed not to practice orthodontia in the District for a period of 10 years after leaving the service of the plaintiff. A few months before expiration of the contract defendant gave notice to plaintiff of his election to terminate the contract as permitted by the contract of employment. Thereafter he en-

---

1. Godfrey v. Roessle, 5 App.D.C. 299; Allison v. Seigle, 65 App.D.C. 45, 79 F.2d 170; Hartung v. Hilda Miller, Inc., 77 U.S.App.D.C. 164, 133 F.2d 401; Burton, Parsons & Co. v. Parsons, D.C., 146 F. Supp. 114, 117.

tered upon the practice of orthodontia in the District of Columbia, and plaintiff brought suit to enforce the restrictive covenant, which the Court upheld. That case, however, differs from the instant one in several respects. As pointed out therein, the practice of orthodontia was a specialty which had then been in existence for only about 30 years. There was little chance for a student to acquire knowledge of this science except by becoming associated with an orthodontist, and receiving training and instruction in that manner. The defendant obtained not only the advantages of a preceptorship, but also the advantages gained by his acquaintanceship with patients of defendant. He, therefore, acquired something from plaintiff by reason of his employment which required the protection of the covenant. There are no such special considerations involved in the instant case.

The other appellate opinion is found in Chemical Fireproofing Corp. v. Krouse, 81 U.S.App.D.C. 145, 155 F.2d 422, which involved an employment contract. Plaintiff sought an injunction to prevent defendant from solicitation of the former's customers under a restrictive covenant. The only issue decided by the Court of Appeals was that the territorial limitation of several states and the District of Columbia and the time limitation of three years was unreasonable and invalid.

In the District Court I find two reported cases relating to an employment contract, but they do not appear to be pertinent to the issue involved in this case. In one, Byram v. Vaughn, D.C., 68 F.Supp. 981, the Court refused to enforce a restrictive covenant on the ground that there was no mutuality of obligation, in that the agreement of employment contained no undertaking on the part of the employer to continue the employee's services for any specified time, and that so far as the employer's obligation was concerned he could have with impunity terminated the employment and discharged the employee the day or even the minute after the employment commenced. No such condition exists in this case. The

other case in the District Court is Meyer, v. Wineburgh, D.C., 110 F.Supp. 957, involving a contract of employment. There the Court issued a temporary injunction, but did so on the basis that it was to preserve to plaintiffs the fruits of defendant's services for which he had been paid as an employee of plaintiff. The case is therefore not in point.

This appears to exhaust the case law in this jurisdiction, and neither diligence of counsel nor I have been able to find any authority to support plaintiff's position on the factual situation involved herein, namely, a contract of employment solely, involving no trade secrets, confidential knowledge, expert training or fruits of employment to give support to the covenant after defendant left the services of plaintiff. No longer is it a covenant ancillary to the purchase of a business and the protection of good will on which reliance might be placed for validity. Nor has defendant acquired something from his employment which needs the protection of the covenant. Its effect, if enforceable after termination of the employer-employee relationship, would be to maintain defendant in a state of servitude to plaintiff, that is, it would require him to work for plaintiff or not work at all in the only business he knows, and the latter would now be his lot until the expiration date. On this point the evidence shows that defendant's whole life work and training and skill have been involved in this line of work, and that he has no training in any other. His slight excursion in, and experience with, the sale of restaurant equipment in conjunction with plaintiff during the time he was plaintiff's employee, as shown by the evidence, is not convincing that he could profitably enter that business, even if he had the capital or the credit required, which the evidence discloses he does not possess.

I am therefore of the view that plaintiff, after revoking an apparently valid covenant ancillary to the purchase of the business, has now drawn the string so taut that the covenant no longer has validity, being unsupported by an exist-

ing employer-employee relationship or any special right or consideration of the character above set forth which reasonably required protection. This view follows the reasoning of many Federal and State cases, several of which are cited in the footnote.[2] Among them also are Erikson v. Hawley, supra, and the landmark case of United States v. Addyston Pipe and Steel Company, C.C., 85 F. 271, 281, 46 L.R.A. 122, in which Circuit Judge Taft wrote the opinion concurred in by Judges Harlan and Lurton. In it he states that covenants in partial restraint of trade are generally upheld as valid when they are:

"agreements (1) by the seller of property or business not to compete with the buyer in such a way as to derogate from the value of the property or business sold; (2) by a retiring partner not to compete with the firm; (3) by a partner pending the partnership not to do anything to interfere, by competition or otherwise, with the business of the firm; (4) by the buyer of property not to use the same in competition with the business retained by the seller; and (5) by an assistant, servant, or agent not to compete with his master or employer after the expiration of his time of service. Before such agreements are upheld, however, the court must find that the restraints attempted thereby are reasonably necessary (1, 2, and 3) to the enjoyment by the buyer of the property, good will, or interest in the partnership bought; or (4) to the legitimate ends of the existing partnership; or (5) to the prevention of possible injury to the business of the seller from use by the buyer of the thing

sold; or (6) *to protection from the danger of loss to the employer's business caused by the unjust use on the part of the employee of the confidential knowledge acquired in such business.*" (Emphasis supplied.)

This case comes within none of the categories set forth by Judge Taft.

Also it should be stated that the covenant in question does not set forth the limitations of the territory with exactitude. It merely states that the defendant agrees not to "engage in any competitive business" involving the sale of barber and beauty shop equipment or supplies as sold by the plaintiff. It is true that in some cases[3] this inexactitude as to territory has been interpreted by the Courts to intend to protect against competition within a certain territory where the plaintiff is shown by the evidence to be in business, but it is not necessary to reach that question because of its invalidity in any event, for the reasons above stated.

One point remains. Plaintiff contends that not to enforce the covenant would allow defendant to profit by his own wrong doing. But to this contention I do not subscribe. Plaintiff has lost no money by defendant's acts, and he voluntarily terminated the agreement of employment. When he did so by agreement with defendant, for whatever cause, he lost the benefit of the covenant, as there was no longer an employer-employee relationship on which to predicate it. Nor were there any special benefits of defendant's employment to support its future validity. In my opinion, the covenant is unenforceable as in unreasonable restraint of trade and contrary to public policy.

Accordingly, I find for the defendants. The temporary injunction will be dis-

---

2. Carter v. Alling, C.C., 43 F. 208; Harrison v. Glucose Sugar Refining Co., 7 Cir., 116 F. 304, 58 L.R.A. 915; Cropper v. Davis, 8 Cir., 243 F. 310; Hill v. Central West Public Service Co., 5 Cir., 37 F.2d 451; Wark v. Ervin Press Corp., 7 Cir., 48 F.2d 152; Super Maid Cook-Ware Corp. v. Hamil, 5 Cir., 50 F.2d 830; McCluer v. Super Maid Cook-Ware Corp.,

10 Cir., 62 F.2d 426; Wahlgren v. Bausch and Lomb Optical Co., 7 Cir., 68 F.2d 660; Kaumagraph Co. v. Stampagraph Co., 197 App.Div. 66, 188 N.Y.S. 678.

3. Cropper v. Davis, 8 Cir., 243 F. 310; Burton, Parsons & Co. v. Parsons, D.C., 146 F.Supp. 114.

414

solved, and a permanent injunction will be denied. Counsel will submit judgment accordingly. If findings in addition to those contained in this opinion are considered necessary by counsel, they will be submitted on notice.